Barbara L. Franklin, Esq., #8021
45-3438 Mamane Street, Bldg. 2
Honokaa, HI 96727
Telephone: (808) 775-0530
Facsimile: (808) 775-1040
E-mail: barbara.franklin@hawaiiantel.net

Attorney for Creditor
KONA FARMS, L.L.C.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR DISTRICT OF HAWAII**
**HONOLULU DIVISION**

| | |
|---|---|
| In re:<br><br>JOHN LANGENSTEIN, DEBTOR | CHAPTER 13 BANKRUPTCY CASE<br>No. 1-09-bk-00516<br><br>OBJECTION TO CHAPTER 13 PLAN<br><br>Judge Robert Faris<br><br>Hearing: May 29, 2009, 10:00 a.m. |

**OBJECTION TO CHAPTER 13 PLAN**

     KONA FARMS LLC, by and through Barbara L. Franklin, Esq., a party in interest in the above-captioned chapter 13 case, hereby objects to the confirmation of the chapter 13 plan filed by the Debtor on April 17, 2009, pursuant to Rules 3015 (f) of the Federal Rules of Bankruptcy Procedure (the Bankruptcy Rules) and sections 1324 and 1325 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (as amended, the Bankruptcy Code).

     KONA FARMS LLC ("KFLLC") is an unsecured creditor and holds claims against John Langenstein, based upon certain claims made in the District Court, Clark County Nevada, Case No. A519383 filed on March 24,

2006, and filed as Proof of Claim No. 12 for $1,200,000.  KFLLC for its objection to confirmation would show the court the following:

    I.    The Chapter 13 plan is not proposed in good faith.  The Debtor has failed to meet the requirements for confirmation.  11 U.S.C. § 1325 states, in part, the requirements for confirmation of a chapter 13 plan: "(a) Except as provided in subsection (b), the court shall confirm a plan if--(3) the plan has been proposed in good faith and not by any means forbidden by law. . . (7) the action of the debtor in filing the petition was in good faith."  KFLLC requests that the Court deny confirmation based on lack of good faith in proposing the chapter 13 plan.

    II.    The Debtor has failed to file all applicable Federal, State and local tax returns, including copies of 2008 Federal and State Tax Returns, precluding confirmation of a plan under 11 U.S.C. § 1325 (a)(9).

## PREPETITION FACTS

1.    Creditor KFLLC is a Nevada limited liability company doing business in Clark County, State of Nevada, and owns Kona coffee farms in the County of Hawaii.

2.    KFLLC and 76% of its members initiated a lawsuit against the Debtor based upon certain claims for damages for fraud and intentional misrepresentations in the State of Nevada in an amount in excess of $1,200,000.00.  See, <u>Creative Lifestyles, LLC, Kona Farms LLC, et. al. v. John Langenstein, individually and as Trustee of the John Langenstein Family Trust,</u> Complaint in District Court, Clark County, Nevada, Case. No. A519383, filed on March 24, 2006, attached to Proof of Claim No. 12.

3.    Garnett K. Hall is the Manager of KFLLC and as submitted the Declaration of Garnett K. Hall in Support of Objection to Chapter 13 Plan ("Hall Declaration").

4.    The lawsuit was initiated March 24, 2006, and KFLLC and its members actively litigated the case.  The complaint included claims for

fraud and intentional misrepresentation, as well as negligent misrepresentation. The claims for fraud and intentional misrepresentation were initially dismissed by the Nevada court because of lack of evidence. The Nevada jury trial finally began in March of 2009. The Debtor's trial counsel was Richard McKnight and David Mincin.

5. At trial, testimony from witnesses showed fraud and intentional misrepresentation. See, Hall Declaration. Therefore, the Plaintiffs moved for reinstatement of the fraud and intentional misrepresentation claims, and the Nevada court granted that motion. After three full days of jury trial, and just before the case went to the jury for a decision, John Langenstein filed the present bankruptcy. Langenstein filed the bankruptcy solely to defeat the jury trial and after the Plaintiffs incurred the expense of the jury trial. See, Hall Declaration.

6. Then, on the very day that the court declared a mistrial because of the bankruptcy, Keen Ellsworth, Plaintiff's Nevada counsel, received an email from Langenstein's attorney, David Mincin. A copy of that email is attached to the Hall Declaration as Exhibit A. In that email, David Mincin states "I just wanted to make sure that you understand legally, John can have his case dismissed very easily right now. If there is any sentiment for settlement discussions, the bankruptcy is not an impediment." See, Declaration of Keen Ellsworth, Exhibit B to Declaration of Garnett K. Hall.

7. Then, the very next day, Keen Ellsworth received a telephone call from Richard McKnight, the lead attorney for Langenstein stating that because of the bankruptcy, the Plaintiffs would not be able to pursue its claims against the Debtor for misrepresentation, but the Debtor would be able to pursue his claims against the owners of Kona Farms for payment on certain promissory notes. See, Declaration of Keen Ellsworth, Exhibit B to Declaration of Garnett K. Hall. Ellsworth states that Mr. McKnight also said a new lawsuit to be filed in bankruptcy court against the owners in Kona Farms. Finally, Mr. McKnight said that the bankruptcy can be dismissed immediately upon a

settlement and payment to Langenstein of $500,000.  See, Declaration of Keen Ellsworth attached hereto as Exhibit B.

8. Mr. McKnight (Langenstein's trial counsel) took a secured interest in the promissory notes of the owners of KFLLC that are at the heart of the Nevada lawsuit.  This significantly impaired potential settlements and violates Nevada's rules of ethics.

9. On March 4, 3004, Freedom Nevada Trust entered into a Promissory Note with the John Langenstein Family Trust in the amount of $30,000.00.  A copy of the Note is attached to the Declaration of Edee Gremore in Support of the Objection to Chapter 13 Plan ("Gremore Declaration"), Exhibit A.

10. The John Langenstein Family Trust is a trust created and existing under the laws of Hawaii and is a part owner of KFLLC.

11. From November 1, 2004 to February 1, 2009, Freedom Nevada Trust made monthly payments of $586.14 payable to John Langenstein individually in the manner which was customary between the parties.

12. On behalf of Freedom Nevada Trust, Ms. Gremore made monthly payments to John Langenstein in the six months prior to the filing bankruptcy, but not the payment due on March 1, 2009.   The dates of payment which cleared the bank account for Freedom Nevada Trust were:

| | | |
|---|---|---|
| September 2008 | Check # 1094 | Cleared 10/08/2008 |
| October 2008 | Check # 1095 | Cleared 10/28/2008 |
| November 2008 | Check # 1096 | Cleared 11/28/2008 |
| December 2008 | Check # 1097 | Cleared 01/06/2009 |
| January 2009 | Check # 1098 | Cleared 01/22/2009 |
| February 2009 | Check # 1099 | Cleared 02/18/2009 |

13. Ms. Gremore, Trustee for Freedom Nevada Trust, received an e-mail from John Langenstein, from his E-mail address, kona-coffee@hawaii.rr.com, to her e-mail address at pinklipstick@cox.net dated April 7, 2009, in which John Langenstein asked for the "loan" payment to be made to him.  See, Gremore Declaration, Exhibit B.

14. On March 11, 2009, the date of the filing of the chapter 13 petition by the Debtor, the balance owing under the Promissory Note was $4,529.12. See, Gremore Declaration, Exhibit C.

15. On April 17, 2009, ten days after the demand to Ms. Gremore for payment, the Debtor filed the Schedules and Statements.

16. The John Langenstein Family Trust was not scheduled on Schedule B as an asset, nor was the Debtor's interest disclosed elsewhere as required.

17. The payments contractually due under the Freedom Nevada Trust Note in the amount of $586.14 were not listed as income on Schedule I.

18. The payments made by Freedom Nevada Trust to John Langenstein, individually, in October, November and December of 2008 and January and February of 2009 were not included in the six months average income on Line 9, or any other part of the Official Form B22C (the "Means Test"), filed by the Debtor in this case.

## LEGAL ARGUMENT

It is well-established law in the Ninth Circuit that, for a bankruptcy court to confirm a plan, each of the requirements of 11 U.S.C. § 1325 must be present, and the debtor has the burden of proving that each element has been met. Whether a debtor's plan was proposed in good faith was a question of fact. *Smyrnos v. Padilla* (*In re Padilla*), 213 B.R. 349, 352 (9th Cir. B.A.P. 1997).

The courts have developed a four-prong "totality of the circumstances" test to determine whether behavior by the debtor constitutes "bad faith." *In re Eisen*, 14 F.3d 469, 470 (9th Cir. 1994). In *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999), the court revisited the history of the development of the test:

1) "whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise

filed his Chapter 13 petition or plan in an inequitable manner,
" *Eisen* 14 F.3d at 470, citing *In re Goeb*, 675 F.2d 1386, 1391 (9th Cir. 1982);

2) "the debtor's history of filings and dismissals" Id., citing *In re Nash*, 765 F.2d 1410, 1415 (9th Cir. 1985)[1];

3) "whether the debtor only intended to defeat state court litigation," Id., citing *In re Chinichian*, 784 F.2d 1440, 1445-46 (9th Cir. 1986); and,

4) "whether egregious behavior is present." *In re Tomlin*, 105 F.3d 933, 937 (4th Cir. 1997); *In re Bradley*, 38 B.R. 425, 432 (Bankr. C.D. Cal. 1984).

In order to assess a Chapter 13 plan's good faith, the courts looks at the totality of the circumstances and a non-exclusive list of factors to be considered. *In re Padilla,* 213 B.R. at 352-353 (eleven factors); and *In re Wai Mun Chang*, 2004 Lexis 2244 (Hawaii 2004)(twelve factors). Those factors are:

1) The amount of the proposed payments and the amounts of the debtor's surplus;

2) The debtor's employment history, ability to earn, and likelihood of future increases in income;

3) The probable or expected duration of the plan;

4) The accuracy of the plan's statements of the debts, expenses and percentages of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

5) The extent of preferential treatment between classes of creditors;

6) The extent to which secured claims are modified;

7) The type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7;

8) The existence of "special circumstances" such as inordinate medical expenses;

9) The frequency with which the debtor has sought relief under the [Bankruptcy Code];

---

[1] The Debtor has had no previous bankruptcy filings.

>  10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and
>
>  11) The burden which the plan's administration would place upon the trustee.

*In re Stitt* 2008 Bankr. Lexis 3905 at 12 (Idaho)

After the changes made in BAPCPA, the totality of the circumstances, as set forth in *Eisen* and *Leavitt*, continues to guide the courts in determining whether a plan is filed in good faith as mandated by section 1325(a)(3) and not merely to met the mechanical requirements of section 1325(b). *In re Stitt,* 2008 Bankr. Lexis 3905 at 16-22.

A. <u>Misrepresentations in the Schedules and Statement of Financial Affairs.</u>

In the instant case, the Debtor misrepresented facts in the filing of the Schedules and Statement of Financial Affairs. He claims he was current with the filing of his taxes in Schedule E, but an objection to the plan filed by the State of Hawaii Department of Taxation, states that the Debtor failed to submit general excise tax returns for entities that he is responsible for for many years. See, Docket Entry ("DE") 23. The Chapter 13 Standing Trustee also reported to this office that the 2008 federal and state income tax returns had not yet been filed, warranting denial of confirmation.

The Debtor has misrepresented the existence of assets. He has interests in the John Langenstein Family Trust that he has diverted to his own use and failed to schedule both his interests in the trust and the income received by the Debtor in the six months prior to filing. The Debtor failed to schedule his interests in the John Langenstein Family Trust under Schedule B (DE 13 and 19) and Statement of Financial Affairs, item 10 (b) (DE 13).

B. <u>Debtor filed Chapter 13 Plan in an inequitable manner</u>.

The Debtor failed to disclose all disposable income. The Promissory Note from Freedom Nevada Trust, with a balance of over $4,500.00, was providing a stream of income from payments due to John Langenstein

Family Trust, but which were paid to the Debtor personally in the amount of $586.14 each month for the months of October, 2008 through February, 2009, on the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, Official Form B22C.

While the Debtor is proposing to pay 100% of unsecured claims, the Debtor has failed to disclose the extent of all unsecured claims against him as defined by 11 U.S.C. § 101(5) and the amount debts as defined by §101(12). The Proofs of Claim filed by the members of Kona Farms LLC, the Freedom Nevada Trust, Creative Lifestyles, and Racer K, are each $264,457.63, totaling $793,372.89. See, POC # 8, 9, and 10, respectively. The Proof of Claim 11 filed by Bruce Birt Family Trust is $38,729.43. The claim of KFLLC for damages claimed in the Nevada action is for $1,200,000. Even though these claims may be disputed and unliquidated, they can be valued and it is anticipated, based on the testimony in the Nevada action, that the amounts are readily ascertainable in amounts much greater than the $1.00 at which the Debtor scheduled them.

The payment of the claims to KFLLC and its related members will exceed several hundred thousand dollars and would make the Debtor's plan unfeasible.[2]

It is believed that the Debtor allowed a lien or gave an assignment of his interests in the Promissory Notes from Freedom Nevada Trust, Racer K, Creative Lifestyles and the Bruce Birt Family Trust to his Nevada defense attorney, Richard McKnight, after the litigation had been filed against him in Nevada on March 24, 2006, which may be disclosable in the Statement of Financial Affairs item 10(a) if the attorney fees had not been earned at the time of giving the lien or assignment. That documentation has been requested from counsel for the Debtor by the undersigned, but as of the date of this writing, has not been provided to this office.

---

[2] For a discussion of claims with respect to chapter 13 debt limits and eligibility, see, *In re Guastella* 341 B.R. 908 (2006)

The Debtor failed to disclose that he transferred his interests in Langenstein Farms to a self-settled trust within 10 years of the filing of the bankruptcy petition as required by Statement of Financial Affairs item 10 (b).

C.  Debtor used bankruptcy to defeat state court litigation.

The third prong of the Ninth Circuit, however, is whether the Debtor is using bankruptcy to defeat state court litigation. The evidence to support this is that he filed on the third day of the Nevada trial after the Nevada court reinstated the misrepresentation claims.   See, Hall Declaration.

As part of the Complaint, KFLLC alleged that John Langenstein, individually and as Trustee of the John Langenstein Family Trust ("Nevada Defendants"), sold the Langenstein Farm to the Plaintiffs (except KFLLC) and misrepresented the size, quantity of coffee trees and other assets owned and held by Langenstein Farm to the detriment of the Plaintiffs. KFLLC was then formed and other assets were acquired by it from the Nevada Defendants under the expectation that the number of coffee trees and their bean production was or would be as represented by John Langenstein at the time of the acquisition, which proved not to be true. As a result of Langenstein's fraud and misrepresentations, KFLLC has incurred substantial damages in excess of $1,200,000.

An examination of the Debtor's above median-income financial situation, when one takes the claims of KFLLC and its members out of the picture, probably wouldn't warrant filing a petition as he has substantial disposable income, including the undisclosed income of $586.00 per month. See, Schedule I and the Gremore Declaration. Educational and student loans account for $7,657 of his unsecured nonpriority debt.

D.  Debtor's behavior is egregious.

Finally, the fourth prong of the *Leavitt* test is satisfied. The Debtor's behavior is egregious because he used bankruptcy to avoid a judgment which probably would render him unable to file Chapter 13 because of the debt limitations discussed, and such a debt could be found to be non-dischargeable in a chapter 7 case under 11 U.S.C. § 523 (a) (2).

The timing of the bankruptcy coincided with the Nevada judge reinstating the counts for misrepresentation after testimony in the trial that the Debtor did not give the Plaintiffs accurate counts on the number of coffee trees.

**CONCLUSION**

Based on the foregoing facts, argument, and the documents on file in this case, a court could find that the Debtor filed to file his petition in good faith, failed to proposed the chapter 13 plan in good faith, and does not meet the requirements for confirmation. Creditor Kona Farms LLC respectfully requests that confirmation of the chapter 13 plan as proposed by the Debtor be denied.

Dated: Honokaa, Hawaii, on May 22, 2009.

By: /s/Barbara L. Franklin

Barbara L. Franklin, Esq., #8021

Attorney for
KONA FARMS, L.L.C.